We'll hear next, Roberts v. Capital One. Thank you, Your Honors. May it please the Court, Matthew Wessler on behalf of Tawana Roberts. When a consumer walks into a store to buy groceries, if she checks her bank account on her phone and sees an available balance of $50, she reasonably assumes that a debit card purchase of $35 will not incur an overdraft fee. That is true even if, a day later, she willingly overdraws her remaining account balance by paying a $45 water bill. The question in this case is whether, in that scenario, Capital One may charge the consumer one overdraft fee or two. And the answer turns on whether Capital One's contract clearly authorizes it to impose overdraft fees for purchases that exceed a customer's available balance at the time of payment, even if those purchases did not exceed the available balance when they were authorized. Both the plain language of Capital One's contract and the standard practice in the banking industry make clear that Capital One was not authorized to assess overdrafts at payment instead of at authorization. And I'd like to begin— It seems to me there is a different issue here. The first one is whether the contract is violated, which you say it is, but one could read the contract as not being violated. The second one is whether, even if the contract is not violated, the contract is clear enough so that, under the New York general business law, she has a claim of improper conduct. You put the things together. Obviously, if her contract allows that, then it's very easy. But I'd like you to keep them separate because I have more trouble finding a contract violation and am more sympathetic to the second. Certainly, Your Honor. And to be clear, the district court in this case dismissed the New York GBL claim simply because it held that the contract was clear. But its basis for reaching that decision was to seize on what, below, was the key language in this contract, the definitional sentence that defined the term overdraft and explained and informed a consumer that an overdraft would occur when the bank, in its discretion, elected to pay a purchase that exceeded the account's available balance. And it held that the term elect to pay meant, unambiguously, as a matter of law, that the balance could be exceeded at the time of payment instead of at authorization. And I think the problem with that argument, just as a plain textual meaning of the ordinary words elect to pay, is that it reads out the key phrase elect to, which, just as a matter of ordinary meaning, means to choose. And under Right. But it doesn't speak the, you're talking about the overdrafts language. It's, it's, it's, it's, it's a, there's a bullet and then it says overdrafts. Correct. That's correct. And it's, it's, it's that first sentence. That's correct. So we may, in our sole discretion and without obligation, elect to pay checks and other items drawn on your deposit account or to permit automatic bill payments and withdrawals against your account. If we elect to pay overdraft, then later on it says, you understand and agree that if we elect to pay overdraft items, you have no right to defer payment, blah, blah, blah. Now, where is the time on that? Where does it say we must pay, the overdrafts are to be taken at the, at the moment we choose, we, we decide to pay as opposed to just the fact that we elect to pay with, with silence as far as the time and time involved. The, the, the only point at which the bank has discretion can choose to pay a transaction. Right. Is at authorization. Right. And so. They can elect to pay there, but it doesn't say that the, that will be the moment of, of determining the overdraft. We agree. We agree that there is no temporal language in this contract that identifies a particular time. Why does that language simply say we have chosen this method to do this? That we have elected this method to do this? You say that the word elect is, is surplusish, but to me it just says, this is what we have chosen to do, and it doesn't say anything about about time. Payment is what then says that. That's right. I have a problem with your argument that this breaches the contract, whether it makes sufficiently clear to somebody using it that they may be charged twice is another matter. But I have trouble seeing how it breaches the contract. I, I think I have a, a couple of responses to that, Your Honor. If what you're suggesting is it just identifies that the bank has discretion to pay these overdraft charges, well, I think that renders the previous clause in that same sentence superfluous, which identifies specifically that the bank has the discretion to pay overdrafts. The elect to language has to do some work in this clause, and it identifies the point in time at which the bank has that discretion. It's at authorization. Just to finish that point, further down in that paragraph, Your Honors, you'll see that there is language that says that the bank, that our decision to pay an overdraft is solely within our discretion. That cannot be true at payment, because at payment the bank has no discretion. And so just as a matter of internal logic, an overdraft may only occur under this contract at the time the bank authorizes the transaction to occur. If, if it were to do it at payment, it would, even though there would be no overdraft at authorization, it would nevertheless pay the charge at payment, but it wouldn't have any discretion to do so. Because as a matter of, again, custom and usage within the industry, when a bank authorizes a debit card transaction at the point of sale, when a, when a consumer swipes her card, the bank is saying to the merchant, I promise to pay that no matter what. And the only time at which it has that discretion is authorization. And so the bank could have written a contract, just to be clear, and we've cited these examples in our, in our briefs, where, where it adequately and clearly informs the consumer that an overdraft can occur at payment or at the time of settlement, which is the same thing. But Capital One did not do that here. It didn't identify any specific temporal element in its contract, and all it left the consumer to do was guess, essentially, about when an overdraft would occur. And I think we can see that in part by the, by the language that Capital One seizes on in this case to argue that its contract is clear. Oh, so, so, so, so overdraft, right, is tacked on as a parenthetical, right? There's a parenthetical that says end and then quote overdraft. That's right. And so you could interpret it, I guess, in, in a couple of different ways. Is that, is that right? I mean, overdraft could occur at the time of authorization, as asserted by, by you, or as referring to the payment itself, which would happen at the time of settlement, which is your adversary's argument. And so you've got two definitions, you have two definitions subject to more than one interpretation on this view, and that it's, it's ambiguous, right? I think that's exactly right, which all this Court at this stage is, is asked to do is to, is to reverse the district court's grant on the pleadings that this contract is unambiguous as a matter of law. And I think it, in similar context, courts when, have, they've looked at, at banking contracts and have identified an imprecision, an imprecision within the language itself, have, have declined efforts to kick the case at the pleading stage to allow the parties to, to, to help and reinforce each of their competing interpretations through discovery. There are a lot of questions that are still unknown at this point, and, and, and allowing this case to move forward would, would in form what is, I think, quite an, an ambiguous matter of contract drafting. Am I correct, I, I realize that the district court engaged in analysis of, of elect to pay, but in, in the arguments that you submitted below, elect to pay was not really a central part of, of what you were arguing. In fact, it, it was really just in one sentence. I think it, I think that's a fair characterization, Your Honor, but I don't think that's a forfeiture argument. I mean, I think this court's prudential rule here is designed to prevent surprise or prejudice or ruling on an issue that wasn't passed below. But what I'm saying is it suggests to me that you didn't think it was a winner below, and the district court then talked about elect to pay and now you're focusing on elect to pay. Well, we, we, we think that the district court's interpretation of that phrase got it wrong. It has been our position from the beginning in this complaint that the contract did not clearly authorize Capital One to assess overdrafts at payment instead of at authorization. Yeah, but there's a difference between what you're saying now, that it didn't clearly authorize, and now you're saying it's ambiguous as to whether it was violated or not. And below you argued it didn't clearly authorize, and here, because she then made that argument, you're saying basically it is also a, at least ambiguous as to whether the contract was, uh, uh, was, was violated, didn't it? Well, well, certainly to win our claim, Your Honor, we must establish that the contract did not authorize Capital One to assess overdrafts at payment. But, but, but the question that is in front of this court at, at this point is whether the contract unambiguously as a matter of law can be said to authorize Capital One, uh, to assess overdrafts at payment. And I think there's a, a, a, a patent ambiguity in the way you could interpret that single term. And I think you, you only need to go and see Capital One's lead argument to understand why I think that, that, that this contract is not clear. Their, their argument now, instead of focusing on that elect-to-pay language or anything in that definitional sentence, relies on a sentence later in that paragraph that informs consumers that, uh, they can avoid overdrafts by, uh, covering, uh, by, by having enough money in their account to cover a particular transaction. But that doesn't tell you anything about when an overdraft is assessed, and so they're forced to rely on essentially the negative inference of that court suggests that that's just, that's just bad contract language. If you're having to rely as your lead argument on a, on a clause that doesn't clearly tell you one way or the other when overdrafts are assessed. We have your argument. Thank you. Thank you. You'll have two minutes in rebuttal. Thank you, Your Honor. I'm Joseph Palmore here on behalf of Capital One. This is a straightforward contract case. The question is, when are overdraft fees imposed under these agreements? Are they imposed when Capital One merely authorizes a charge, even though in many cases that authorization amount is non-final and subject to change? Or are they imposed when Capital One actually pays the debit? Could you, could you describe so we understand exactly what's going on? So if I have, let's in my bank account, and I have it right now, $10 in my bank account, and I make five $1 purchases this, this afternoon, one $10 purchase tomorrow that is settled the same day, and then on Thursday, my five $1 purchases are settled. Am I right that, that if the overdraft fees are based on funds available at the time of authorization, I will pay one overdraft fee for my $10 purchase tomorrow? But if overdraft fees are based on funds that are available at the time of settlement, I'll be assessed five overdraft fees on Thursday? Yes, Your Honor, with a caveat that JA 39, the number of overdraft fees per day are capped at four. Four. But I take your point. Four, yeah. Yes, Your Honor, because there are provision after provision of these contracts which make clear that the operative moment is payment. And I'd like to, with the Court's . . . But is it, what I'd like to know, apart from what we say the contract says and requires or doesn't require, where is it clear that someone who at the time they buy something has enough money in that account so that that will be covered may end up, because of this way of doing it, end up paying up to four overdrafts? Where is that clear? And as I say, that is apart from the question of whether there is a breach of contract in doing that, but whether that is sufficiently unclear so that under the New York general business law, this could be said to be deceptive. Your Honor, under the New York business law, it requires an affirmative misrepresentation. So it's not, it doesn't, there's no higher disclosure obligation. And as this case comes to this Court, it's common ground that the New York claim rises or falls with the contract claim. The plaintiff has never argued for a different standard. But, Your Honor, if you look at Page . . . An affirmative misrepresentation is not necessarily the same as a breach of contract. But you're right. You need something which is an affirmative misrepresentation. But it doesn't. So I'm not as comfortable as saying the two things necessarily ride the same way. But that's . . . Right. And I don't think we have either here, Your Honor, an answer to your question of where is the customer warned about this kind of situation. On JA 53, the third paragraph, second sentence, says, you agree not to withdraw, write checks, or make point-of-sale purchases against the funds that are needed to pay ATM debit card transactions that have not yet $10 in my account. And I write a check for $10. I have enough money in my account at the time I write that check. But then I go out later that day and take the $10 out of my account at the ATM. I no longer have enough money to cover that transaction. And I'm going to incur an overdraft. And here the customer is warned in provision after provision that this analysis, this math is done at the time of payment. And I'd like to walk the Court through a few of those provisions. The first one I'd like to call the Court's attention to is JA 54. This is, there's a paragraph there that's titled overdraft situations. The first sentence says, an overdraft occurs when you do not have enough money in your designated account to cover a transaction, but we pay it anyway. The focus, again, is on payment. And there is a temporal element here. It uses the word when. If the customer doesn't have enough money to pay for a transaction, then, and the bank pays it anyway, an overdraft fee. Where is the language at the time capital one pays? It says when. An overdraft occurs when you do not have enough money in your designated account to cover a transaction, but we pay it anyway. That just describes the situation, doesn't it? I mean, if you don't have enough money, we can pay it, and that will be an overdraft. Yes, when we pay it. But that doesn't say the moment of payment. Well, I read the when as applying to both, and I think especially if you look at this. Yeah, I know you do, but the question is, is that ambiguous or not? Your Honor, there's another provision I'd like to call the Court's attention to at JA 39. I see how one could read that in different ways. Not necessarily in one way. Well, Your Honor, it only talks about payment. It doesn't talk about authorization. And then if you look at JA 39, the paragraph overdrafts that the Court was looking at before, the very last sentence, and Mr. Wessler referred to this, you can avoid overdrafts on your account by always making sure that you have sufficient available funds in your account to cover all of the debits presented for payment against your account. This is, again, payment is the operative event, and not in the District Court, but now Ms. Roberts acknowledges that authorization and payment are two separate things. And here, what the— Well, couldn't a reasonable consumer consider something to have been paid when they swipe their debit card, not when the bank's back office operations are completed? Not when reading this contract, Your Honor. Or at least that that's when it is presented. No, because presented for— I know, but presented for payment doesn't necessarily mean paid. And it's presented for payment when I give it to somebody to be authorized. That's when I present it for payment and it is authorized. When it is paid could be a different thing. Now, you know, I'm not saying it can't be read your way, and indeed, that I would probably read it your way, but I'm not so sure that presented for payment means the same thing as getting paid as against presented at a time for authorization. Well, Your Honor, I think it's common ground that plaintiffs acknowledge that presented for payment is a different thing from authorization. The contract also makes that clear. If you look higher up on the same page, JA 39, there's a section here called returning items. And the second sentence is significant in a couple respects. It says, at any time before final payment, as defined by the UCC, we may return any check, draft, series of things, including an electronic debit or other item presented for payment against your account. That uses presented for payment in the distinct sense of not authorized, not when I write the check. It's when the bill is due, when the debit is presented to the bank for payment. That's the operative moment. And the reason that sentence is significant, again, too, is that there is nothing in this contract that requires Capital One to pay charges that are authorized. Plaintiffs' entire argument about the first sentence of this overdraft paragraph on JA 39, which I'd like to address, hinges on these fairly obscure network payment rules that require the payment of authorized charges. Those are completely external to this agreement. There is nothing in this agreement that requires Capital One to pay. Wouldn't it be very clear for the bank, easy for the bank to say, you may end up with more than one overpayment charge, even though some of your bills would have been covered? Isn't that really ultimately the issue of whether somebody going to buy and doing this thing can reasonably understand that they may be socked for 2 or 3 or 4 maximum, rather than just one, if they had enough money to pay for some of it? That's my, you know, my problem in terms of just somebody going there and doing it, I think, is likely in this situation to be surprised. And my question is, who has a right to surprise in that situation? Right. Your Honor, I don't think there is any surprise because provision after provision makes payment the key moment. And so if I write 5 checks at a time when I have enough money in my account to cover them, but then I go to the ATM and take all the money out, I'm going to be assessed 5 different overdraft fees for those 5 checks. There's nothing surprising or shocking about that. The first sentence in the overdraft paragraph that Mr. Wessler talked about, and the Court got at this, is simply a statement of Capital One's discretion. Yeah, but let me put it a different way. Sure, if I go and take that money out, that's clear. But say I write 6 checks, and 5 of them are covered, and the bank chooses for its own reasons to cash the 6th check that takes the money out of the account, and therefore there isn't enough for the first 5, as against taking the first 5 and then taking the 6th one, that I take the money out before the others are paid. And you see what I'm saying? I see what you're saying, and there's actually a provision in the contract that addresses that, which is at JA 38. And it's at the bottom of the page, it says, Processing Order of Credits and Debits. And that goes to your question, and it's significant for a couple reasons. One is that there's language in the second paragraph that says, Our processing order might not be the same as the order you make transactions, and could result in overdraft transactions. Again, the customer has expressly warned that the order you made these transactions isn't necessarily going to be dispositive. What matters is — That's the most powerful section. I'm glad you brought it up. That was the one I found most powerful in the discussion. And, Your Honor, it's powerful for another reason, too, because it shows that the Capital One is contractually bound to process credits before debits. And that's significant because it shows that the way that Capital One does this, by assessing overdrafts at the time of payment, actually assists many customers. If I'm a customer and I have insufficient money in my account on a Monday, but I have groceries to buy, I need gas for my car, and I know my paycheck is going to be deposited electronically later that day, I can use that float, I can incur those charges, and I won't be assessed an overdraft penalty, because at the end of that day, under these processing orders, Capital One is going to give me the credit for that paycheck first, and then it's going to deduct those debits, and I won't have to pay an overdraft fee. Under plaintiff's view, Capital One would assess an overdraft fee at the time of authorization, and I think that would actually put it in breach of this situation. And there's another aspect of this that's significant, too, Judge Calabresi, and it goes to your hypothetical. If you look at this chart at the top of JA39, number four is for debit card transactions and fees. This is kind of a highly reticulated system of how Capital One will process these. It says, if you look at the right column, how these are processed, these debit transactions, by date and time, if available, everything else from lowest dollar amount to highest. That's a pro-consumer provision here, because it means that there will be, even if you added up all the debits and they come to more than the balance, there will be fewer overdrafts incurred because you go from lowest to highest. But again, if you assess, Capital One would be in breach of that as well, if it did it the way that plaintiff suggests, because all that you would look at would be the time of authorization, and consumers would lose the benefit of this lowest to highest provision. Thank you. Thank you, Your Honor. You have two minutes. Thank you, Your Honor. Just a few brief points in response. Maybe we should just discuss the processing order, since Your Honor thought that was the strongest contractual hook into clarity. I mean, I think that provision is equally consistent with an overdraft process that assesses overdrafts at authorization and one that assesses overdrafts at payment. Processing order, although it might matter for checks, other automated clearinghouse, automated debit card transactions outside of the point of sale context, doesn't apply in the same way when you're talking about debit cards. And so for checks or ACH payments, the point of authorization and the point of payment are the same. The bank doesn't get the check until it's received from the person, and then they automatically pay that check. For debit card payments, it works differently. The point of authorization is a promise. It's a promise by the bank that no matter what, it will pay that transaction to the merchant. And it's at that point when any bank, including Capital One, but this is true across the industry, has the discretion to say, yes, we will agree to pay this purchase, even though it is an overdraft, or no, we will not pay this purchase because you've overdrawn your account. That's what customers understand. That's what federal regulators understand. The CFPB has made clear that this kind of process, the Capital One's approach here, cuts against the way consumers understand how it works. And if it's going to be allowed, the CFPB has said, the banks have to clearly disclose that they're doing that here. I think what we have in this case is at best a set of contractual provisions that are ambiguous, that are an equipoise one way or the other, and the bank could have written it more clearly. There are plenty of examples where banks do, but in the absence of that clear language here, the District Court was wrong to prematurely dismiss this case at the pleadings. Thank you, Your Honors. Thank you both for your good arguments. The Court will reserve decision. We will take a five-minute recess. Court is in recess.